The document below is hereby signed.

Signed: June 14, 2011



_S. Martin Teel Jr._

_____

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
STUART MILLS DAVENPORT,        )    Case No. 09-00772
                               )    (Chapter 13)
              Debtor.          )    Not for Publication in
                               )    West's Bankruptcy Reporter

<u>MEMORANDUM DECISION AND ORDER RE MOTION TO MODIFY PLAN</u>

The debtor has filed a motion to modify the debtor's
confirmed plan to require Litton Loan to disgorge payments it has
received in this case in light of that creditor's having amended
its proof of claim.  The trustee objects that an adversary
proceeding is necessary to recover money.  *See* Fed. R. Bankr. P.
7001(1).  I sustain that objection.  *See In re Mansaray-Ruffin*,
530 F.3d 230, 236 (3d Cir. 2008) (11 U.S.C. § 1322(b)(11), in
allowing a plan to include any provision not inconsistent with
the Bankruptcy Code, does not permit a court to disregard Rule
7001); *In re McKay*, 732 F.2d 44, 48 (3d Cir. 1984) (same,
addressing § 1322(b)(10), as § 1322(b)(11) was then numbered).

But I also note, as discussed below, that the debtor's
motion fails to show any basis for requiring Litton Loan to

disgorge the entirety of the payments it has received.   The debtor's motion points to an order approving a settlement reached with Litton Loan.   Under that settlement, Litton Loan is treated as holding an allowed secured claim as of the petition date in the amount of $280,000 and an unsecured claim in the amount of $105,597.08, of which no part constitutes a prepetition arrearage.   As required by the settlement, Litton Loan has filed an amended proof of claim reflecting those claims, with no prepetition arrearage being asserted.

Under the confirmed plan, any prepetition arrearage owed Litton Loan was to be paid under the plan, and any unsecured claim of Litton Loan was to be paid pro rata with the claims of other creditors holding general unsecured claims.   According to the trustee (see Dkt. No. 191), Litton Loan has received $25,354.13 (apparently because of the now withdrawn arrearage claim) in plan payments.   Any plan payments Litton Loan has received must now be treated as payments on its general unsecured claim.   The debtor's motion seeks an order requiring Litton Loan to disgorge the entire $25,354.13 to the trustee.

The confirmed plan called for payments of $3,600 per month for 60 months, or a total of $216,000.   Assume that the trustee's commission is 10%, so that if charged on the entire $216,000, it will reduce the $216,000 to $194,400.   The trustee has filed a report on claims (Dkt. No. 188) which discloses that there are

2

the following claims:

- $364,339.38 in allowed general unsecured claims in the case that under the confirmed plan are to be paid pro rata;

- an administrative claim of the debtor's attorney for $2,000.00; and

- $24,761.26 owed on two claims (one for $6,175.54 owed on a secured arrearage claim held by Bayview Loan and the other for $18,585.72 owed on a priority tax claim held by the IRS), that under the confirmed plan are to be paid in full with interest of 6% per annum from the confirmation date.

Litton Loan's $105,597.08 unsecured claim represents 28.98316% of the general unsecured claims in the case. It is a safe assumption (based on the trustee's practice) that the trustee has paid only Bayview Loan and the IRS at the same time that she was paying Litton Loan. If plan payments remain current, I assume (based on the trustee's practice of paying claims bearing interest prior to paying general unsecured claims) that Bayview Loan and the IRS will be satisfied via payments short of $26,000. If the debtor completes the plan, then out of the $194,400 (plan payments net of the trustee's commission), reduced by the $26,000 (or less) paid to Bayview Loan and the IRS, and the $2,000 paid to the debtor's attorney, at least $166,400 will be available for

3

general unsecured creditors.  Litton's 28.98316% share of that
would be $48,227.98.  So Litton Loan would receive far more than
$25,354.13 if the debtor completes his plan.

The debtor would probably contend that the $25,354.13 should
have been utilized to satisfy the trustee's obligation to pay
Bayview Loan and the IRS $24,761.26 plus postconfirmation
interest.  In that regard, he has standing to complain (and may
be entitled to obtain a disgorgement order if he can establish
that those claims were required to be paid before Litton Loan's
general unsecured claim, and that the amendment of Litton Loan's
claim requires disregarding that the payment to it was authorized
when made based on what was then an allowed arrearage claim).
If the debtor were to cease as of today making plan payments and
the case were converted to chapter 7 with no distributions being
made in the chapter 7 case, the nonpayment of those entities will
have hurt the debtor even if he receives a discharge.  Bayview
Loan will be left with a secured claim unaffected by the
discharge and the IRS will be left with a nondischargeable
priority tax claim.  If the debtor completes plan payments,
however, this is not a concern.

But, assuming that the trustee has made distributions to
only Bayview Loan, the IRS, and Litton Loan, and that there have
been 12 months of plan payments, totaling $43,200, then after the
$25,354.13 received by Litton Loan is taken into account, Bayview

4

Loan and the IRS should have received roughly $13,500.00 in distributions out of the $43,200 in plan payments less the trustee's 10% commission. That would leave approximately $11,000.00 owed on their $24,761.26 in claims. In that event, only $11,000.00 would be the amount that Litton Loan should disgorge in order that Bayview Loan and the IRS would be paid in full and stop interest from running.[1]

Upon disgorging $11,000, Litton Loan would be left with roughly $13,000, and other general unsecured creditors would have received nothing. The debtor has pointed to nothing to demonstrate that he has standing to complain that the other general unsecured creditors received nothing. Even if he did have standing, Litton Loan would have been entitled to receive a pro rata share of whatever was distributed to general unsecured creditors, and ought not be required to disgorge that share. Moreover, if plan payments are completed there will be no need to have Litton Loan disgorge funds in order that general unsecured creditors receive payment, making it a largely useless exercise to require disgorgement until we see whether plan payments are completed.

For all of these reasons, the debtor's motion fails to

---

[1]  By the time the debtor files an adversary proceeding complaint and the time for an answer has expired, the trustee may have made additional distributions to Bayview Loan and the IRS.

5

establish entitlement to have Litton Loan disgorge the entire sum it has received.  Litton Loan ought to be required to disgorge only such sums as to which the debtor can demonstrate harm to himself arising from the payment of Litton Loan's general unsecured claim (and only to the extent he can demonstrate that the payment was earlier than contemplated by the plan).

In light of the foregoing, it is

ORDERED that the debtor's motion to modify the confirmed plan is DENIED.


[Signed and dated above.]

Copies to: Debtor; Debtor's Attorney; Chapter 13 Trustee;

Daniel J. Pesachowitz, Esq.
Samuel I. White, P.C.
913 King Street
Alexandria, VA 22314


Joe Lozano, Esq.
9441 LBJ Freeway
Suite 350
Dallas, TX 75243

Litton Loan Servicing LP
P.O. Box 829009
Dallas, TX 75382-9009