The document below is hereby signed.

Signed: December 31, 2015



*S. Martin Teel Jr.*

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

```
In re                         )
                              )
STUART MILLS DAVENPORT,       )    Case No. 09-00772
                              )    (Chapter 13)
            Debtor.           )
```

MEMORANDUM DECISION RE DEBTOR'S REVISED
MOTION TO DETERMINE FINAL CURE AND PAYMENT

This addresses the *Debtor's Revised Motion to Determine Final Cure and Payment* (Dkt. No. 318), which deals with the claim of Babak Djourabchi and Monica Welt based on an $80,000 promissory note.

I

The $80,000 promissory note, secured by a security interest in real property of the debtor, called for interest payments only. Had interest payments been kept current until September 2, 2009, the date on which the debtor filed his petition commencing this bankruptcy case, only the principal of $80,000 would have been owing on the petition date. The proof of claim asserted a claim for only $80,000 being owed as of the petition date pursuant to the $80,000 promissory note, and did not list any

arrears as being owed.[1]  The debtor's payments to the chapter 13 trustee under his confirmed plan have been completed, and only after those plan payments were completed did Djourabchi and Welt make a filing in this case asserting that prepetition arrears *were* owed under the $80,000 promissory note.

The debtor contends that no arrears are owed.  However, with plan payments having been completed and distributed, there is no reason, for purposes of administering the chapter 13 plan, to determine the amount of any arrears.

The debtor contends that if arrears *do* exist, the court ought to bar Djourabchi and Welt from collecting those arrears based on their failure to include the arrears on their proof of claim, and award him attorney's fees.  Specifically, the debtor seeks relief based on Fed. R. Bankr. P. 3001(c)(2)(B) and 3001(c)(2)(D), and the doctrine of judicial estoppel.

II

The debtor asserts that if Djourabchi and Welt had included any prepetition arrears owed regarding the $80,000 promissory note on their proof of claim, he would have filed a plan that

---

[1] The total claim on the proof of claim of Djourabchi and Welt was for $94,146.75, but that was because the proof of claim asserted claims for $14,146.75 (including amounts owed on a $10,000 promissory note that came due in 2009) for which no security interest had been granted by the debtor.  Those unsecured claims totaling $14,146.75 have been discharged and are of no relevance to the *Debtor's Revised Motion to Determine Final Cure and Payment.*

called for the arrears to be paid by the chapter 13 trustee from the plan payments.[2]  Instead, paragraph C of the debtor's confirmed plan (Dkt. No. 132) provided in relevant part:

> DIRECT PAYMENTS: **THE DEBTOR SHALL PAY DIRECTLY THE FOLLOWING CLAIMS**, TO THE EXTENT THEY ARE 11 U.S.C. § 1322(b)(5) CLAIMS (THE FINAL PAYMENT UNDER THE PLAN BEING TREATED AS DUE IN 60 MONTHS) . . . :
>
> SunTrust Bank, **Babak Djourabchi and Monica Welt**, and LEDC

[Emphasis added.] Pursuant to that provision, the claim of Djourabchi and Welt (including any prepetition arrears claim) was to be paid directly.[3]  The confirmed plan provided for full payment of the chapter 13 trustee's commission, unsecured claims entitled to priority under 11 U.S.C. § 507(a), and certain secured claims.  The plan did not provide for full payment of unsecured claims not entitled to priority under 11 U.S.C. § 507(a).  Instead, holders of those claims were to receive whatever was left over after payment of those claims that were

---

[2] Under 11 U.S.C. § 1322(b)(5), a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

[3] The last payment on the $80,000 promissory note was due in 2016, more than 60 months after the commencement of plan payments, and thus the claim (whether secured or unsecured, or partially secured and partially unsecured) was a "claim on which the last payment is due after the date on which the final payment under the plan is due" within the meaning of 11 U.S.C. § 1322(b)(5).  Accordingly, pursuant to paragraph C of the debtor's confirmed plan, the claim was to be paid directly by the debtor.

required to be paid in full. Plan payments that could have been used to pay prepetition arrears owed under the $80,000 promissory note (had: (1) the plan provided for payment of the arrears, (2) the proof of claim listed the arrears, and (3) the total plan payments by the debtor to the trustee remained the same) went instead to the holders of those non-priority unsecured claims. It is not clear whether the debtor could have obtained confirmation of a plan calling for a cure of the arrears owed under the $80,000 promissory note and calling for the same amount of payments to the chapter 13 trustee.[4] But if such a plan could have been confirmed, the plan that *was* confirmed was a lucky break for the holders of non-priority unsecured claims (as they received more than they would have had the trustee paid the prepetition arrears claims under the $80,000 promissory note pursuant to a plan calling for a curing of those arrears), but has hurt the debtor (who would have paid no more to the trustee and would have no prepetition arrears owed under the $80,000 promissory note, if the arrears had been included on a proof of

---

[4] Whether such a plan could have been confirmed would have depended on such issues as whether the plan complied with the "best interest of creditors" test of 11 U.S.C. § 1325(a)(4), which requires that:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

4

claim and had the trustee paid off those arrears pursuant to a plan calling for a cure of those arrears).

## III

The *Motion* seeks relief based on Fed. R. Bankr. P. 3001(c)(2)(B) and 3001(c)(2)(D), and the doctrine of judicial estoppel.[5]  The proof of claim violated Rule 3001(c)(2)(B), which provides:

> (B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.

The proof of claim violated Rule 3001(c)(2)(B) because it failed to include "a statement of the amount necessary to cure any default as of the date of the petition."  The issues presented by that violation are whether the debtor is entitled to any relief based on that violation under Rule 3001(c)(2)(D), and whether the doctrine of judicial estoppel bars assertion of the arrears claim.

## IV

With respect to the consequences of a violation of Rule

---

[5]  The debtor's *Motion* was described by the debtor's attorney on the court's electronic docket as a "*Motion for Determination of Final Cure and Mortgage Payment re: Rule 3002.1.*"  However, Rule 3002.1(a) provides that Rule 3002.1 only applies to "claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the Code in the debtor's plan."  Here, the claims were not provided for under § 1322(b)(5).  Instead, the claims were to be paid directly.  Moreover, the *Motion* itself does not mention Rule 3002.1.

3001(c)(2)(B), the *Motion* relies on Rule 3001(c)(2)(D), which provides:

> (D) If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:
> (i) preclude the holder from presenting the omitted information, in any form, as evidence **in any contested matter or adversary proceeding in the case**, unless the court determines that the failure was substantially justified or is harmless; or
> (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

[Emphasis added.]  The debtor asserts that "Creditors are barred by the provisions of Bankruptcy Rule 3001(c)(2)(D)(i) from asserting a Pre-Petition arrerage [sic] at this time." *Motion* ¶ 50.  For the reasons that follow, I conclude that Rule 3001(c)(2)(D)(i) is *not* authority to bar the assertion of any arrears owed under the $80,000 promissory note.

                                    A.

The debtor's view of Rule 3001(c)(2)(D)(i) as permitting disallowance of a claim based on a violation of Rule 3001(c)(2)(B) is an erroneous view.  As stated in *In re Reynolds*, 470 B.R. 138, 144-45 (Bankr. D. Colo. 2012):

> Neither Rule 3001(c)(2)(D)(i) nor (ii) include disallowance of the claim as a permissible remedy. . . . [T]he revised Rule 3001 makes it clear that a creditor who fails to fully comply with the . . . requirements of Rule 3001(c), primarily faces the *evidentiary* sanction of being precluded from introducing [the omitted information] at a subsequent hearing on a substantive objection to its proof of claim under § 502(b). Conversely, **Rule 3001(c) does not provide authority for**

>   **this Court to deny a creditor's claim based solely on its failure [to comply with] Rule 3001(c).** Because claim disallowance falls outside of the remedies enumerated under Rule 3001(c)(2)(D), the rule precludes such a remedy. Since the Motions stated no substantive objection under § 502(b) to the creditor claims, they have failed to state any ground upon which the Court may grant the requested relief . . . .

[Second emphasis added.] *Accord In re Khatibi*, 2014 WL 2617280, at *5 (M.D. Ga. June 12, 2014).

### B.

Moreover, as explained in part C below, no proceeding can be brought in this court now to determine the amounts owed under the $80,000 promissory note because the chapter 13 plan has been fully administered. Thus, there can be no proceeding in which the evidentiary penalty of Rule 3001(c)(2)(D) could come into play. As stated by the *Reynolds* court on reconsideration, "[a]t a hearing where the merits of a claim are not at issue, the penalty set out in Rule 3001(c)(2)(D) is meaningless because it only comes in to play at a hearing on the merits of a claim where a court would otherwise entertain the type of evidence required by Rule 3001(c)(1)." *In re Reynolds*, No. 11-30984 HRT, 2012 WL 3133489, at *3 (Bankr. D. Colo. July 31, 2012). Stated differently, "when the merits of a claim are never called into question there is no occasion to exact the evidentiary penalty called for by application of Rule 3001(c)(2)(D)." *Id.* at *4.

To elaborate on why it is only in the context of a contested matter pertinent to the administration of the estate that Rule

3001(c)(2)(D) comes into play, it is worth noting these observations from *In re Brunson*, 486 B.R. 759, 771-72 (Bankr. N.D. Tex. 2013):

> [T]he 2011 amendment added subdivisions (c)(2)(A)-(D). Those subdivisions did two things: first, subdivisions (c)(2)(A)-(C) set forth additional documentation requirements for a creditor filing a proof of claim in an individual debtor case. Second, subdivision (c)(2)(D) explicitly provided remedies for a creditor's failure to comply with the rule's documentation requirements, new or old.
> 
> The court concludes, on closer examination, that none of these "new" provisions are really new at all. Rather, a debtor always had available to it the ability to obtain the information required by subdivisions (c)(2)(A)-(C). And the court always had the ability to provide appropriate remedies for the creditor's failure to provide the information. Further explanation is required.
> 
> The filing of an objection to claim creates a "contested matter" under Bankruptcy Rule 9014. *In re Taylor*, 132 F.3d 256, 260 (5th Cir. 1998). The provisions for formal litigation discovery apply in a contested matter, unless the court directs otherwise. *See* Bankruptcy Rule 9014(c). Therefore, a debtor seeking more information from a creditor respecting its proof of claim may take depositions orally or by written questions, serve interrogatories, requests for production, and requests for admission. A debtor clearly has, and has always had, the ability to get all of the information now required by subdivisions (c)(2)(A)-(C). If the creditor refuses to respond, the debtor has, and has always had, the ability to file a motion to compel, and to seek sanctions, including reasonable expenses and attorneys' fees as set forth in subdivision (c)(2)(D)(ii), and the ability to preclude the presentation of evidence as set forth in subdivision (c)(2)(D)(i). *See* Bankruptcy Rule 7037. Accordingly, the "new" provisions of Bankruptcy Rule 3001(c)(2)(D) are not new at all—rather, they simply streamline the process already provided for in the applicable federal rules. That is hardly surprising because Bankruptcy Rule 3001 is a rule of *procedure*, not *substance*, and helps to secure the "just, speedy and inexpensive determination of every case and proceeding." *See* Bankruptcy Rule 1001.

Case 09-00772    Doc 324    Filed 12/31/15    Entered 12/31/15 15:43:45    Desc Main
            Document      Page 9 of 20

Bankruptcy Rule 3001(c)(2)(D) therefore simply streamlines what would otherwise be a more cumbersome and expensive process, and clarifies the rule by explicitly setting forth what was always true anyway.

Similarly, the Advisory Committee Note accompanying the 2011 amendment sheds light on what was meant by Bankruptcy Rule 3001 all along. The 2011 amendment was promulgated in the midst of judicial debate respecting its meaning and yet it fails to include disallowance of a claim as one of the remedies available when a creditor attaches insufficient documentation to its proof of claim. Thus, the 2011 amendment appears to strongly support the so-called "exclusive" view of § 502 [treating § 502 as setting forth the exclusive bases for disallowing a claim, and rejecting insufficient documentation under Rule 3001 as a basis for disallowing a claim].

C.

The court has subject matter jurisdiction to arrive at its determination that, as a matter of bankruptcy law, the failure to include prepetition arrears on the proof of claim did not affect the amount owed. In seeking a determination in that regard, the debtor relies on the Bankruptcy Code and Federal Rules of Bankruptcy Procedure that applied to the case, and thus the proceeding is one "arising under" the Bankruptcy Code and "arising in" the case within the meaning of 28 U.S.C. § 1334(b). Clearly the court has subject matter jurisdiction to decide what was the impact of a case on a claim. However, this court lacks subject matter jurisdiction under 28 U.S.C. § 1334(b) to hear a proceeding to determine the amount owed under the $80,000 promissory note (with the result that there can be no proceeding in which the evidentiary penalty of Rule 3001(c)(2)(D) can come

into play).

For jurisdiction to exist under § 1334(b), the proceeding must be "related to" or "arise in" the bankruptcy case, or "arise under title 11." Under *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), a proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." The debtor has completed plan payments and received a discharge of those unsecured claims provided for by the plan, and the trustee has filed her final report, without there being any pending contested matter or adversary proceeding (other than the instant *Motion*). Even if Djourabchi and Welt should have included any claim for prepetition arrears on their proof of claim, the confirmed plan provided that the entire claim was to be paid directly by the debtor. Had the arrears been included on the proof of claim, the confirmed plan nevertheless required direct payment of that claim instead of providing for a curing of any arrears via payments from the trustee. In any event, even if the claim for prepetition arrears that Djourabchi and Welt now assert is an erroneous claim, a proceeding to determine the amount of arrears would serve no bankruptcy purpose at this juncture as the debtor has completed his plan payments. Accordingly, such a proceeding to determine the amount of any prepetition arrears claim would have no impact on the administration of the estate (a done deal),

10

and thus would not be "related to" the case within the meaning of 28 U.S.C. § 1334(b).

Nor would the proceeding to determine the amount of prepetition arrears owed under the $80,000 promissory note be one "arising in" the bankruptcy case. "Arising in" proceedings are those "proceedings . . . that occur in the case and that somehow have an effect on the administration of the panoply of rights and duties under the bankruptcy laws," *In re Akl*, 397 B.R. 546, 549 (Bankr. D.D.C. 2008), that is, an "arising in" proceeding "is one that must not only arise from events in the bankruptcy case but that by its nature is of an 'administrative' character because it requires a disposition in the bankruptcy case in order for the bankruptcy case to be administered." *Id.* at 550. There is no requirement in the bankruptcy case to dispose of the issue of the amount of the prepetition arrears claim: the plan has been concluded, and thus the administration of the case would not be affected by a determination of the prepetition arrears claim.

Finally, the claim under the $80,000 promissory note does not arise under the Bankruptcy Code (11 U.S.C.), and a proceeding to determine the amount of the claim would not be a proceeding "arising under title 11."

The debtor might counter that under 28 U.S.C. § 157(b)(2)(B) (addressing "allowance or disallowance of claims against the estate"), bankruptcy courts determine the amount of claims of

creditors all the time. However, as observed in *Johnston v. City of Middletown (In re Johnston)*, 484 B.R. 698, 713 (Bankr. S.D. Ohio 2012), "§ 157 only comes into play if the court first determines it has jurisdiction under § 1334. Section 157 does not create jurisdiction when it does not exist under § 1334."[6]

There being no subject matter jurisdiction to determine the amounts owed under the $80,000 promissory note, there can be no proceeding in which the merits of the claim are at issue. As such, there is no proceeding in which the evidentiary penalty called for by application of Rule 3001(c)(2)(D) would be in play.

V

In seeking disallowance of the prepetition arrears claim

---

[6] Under 28 U.S.C. § 157(a), a district court may refer to the bankruptcy court "all proceedings arising under title 11 or arising in or related to a case under title 11" (which, as already discussed, are proceedings over which district court jurisdiction is conferred by 28 U.S.C. § 1334(b)). In turn, **when a proceeding is referred to the bankruptcy court under § 157(a)**, the bankruptcy court:

- is authorized by 28 U.S.C. § 157(b)(1) to hear and decide any "core proceeding," and

- is authorized by 28 U.S.C. § 157(c)(1) to hear and make a recommended ruling regarding any non-core proceeding.

Under 28 U.S.C. § 157(b)(2)(B), core proceedings include the "allowance or disallowance of claims against the estate." However, if a proceeding to determine the amount of a claim has not been referred under § 157(a), § 157(b)(2)(B) does not come into play. If subject matter jurisdiction is lacking over a proceeding to determine the amount of a claim, as is the case here, the proceeding is **not** referred under § 157(a), and, accordingly, the proceeding is not one that the bankruptcy court may hear.

12

under the $80,000 promissory note, the debtor's *Motion* might also be viewed as asserting an independent cause of action for violating Rule 3001(c).  However, "if the remedy for noncompliance is not disallowance of the claim, it necessarily follows that the much greater remedy of an independent cause of action is likewise not allowed."  *In re Critten*, 528 B.R. 835, 840 (Bankr. M.D. Ala. 2015).

VI

Rule 3001 also provides that a court may "award other appropriate relief, including reasonable expenses and attorney's fees caused by the [creditor's] failure" to provide information required by Rule 3001(c).  Fed. R. Bankr. P. 3001(c)(2)(D)(ii). The debtor's proposed order requests the court to order Djourabchi and Welt to file an amended proof of claim to which the debtor can then object, and requests the court to order "that following the filing of the Amended Proof of Claim and resolution of any objections, the Court shall consider the request for costs and fees against Creditors pursuant to Rule 3001(c)(2)(D)(ii)." At this juncture, however, any necessity of determining the amount of the arrears for purposes of administration of the chapter 13 case has ended, and, as explained previously, the court has no subject matter jurisdiction to determine the amounts owed under the $80,000 promissory note.  Accordingly, the court will not order Djourabchi and Welt to file an amended proof of

13

claim.

Fees relating to pursuit of the *Motion*, which lacked merit, are not compensable under Rule 3001(c)(2)(D)(ii).  It is only attorney work that was warranted by reason of the failure to provide information required by Rule 3001(c) that can be viewed as caused by that failure.  And even if the fees incurred in pursuing this *Motion* could be deemed caused by Djourabchi and Welt's failure to provide information required by Rule 3001(c), because the *Motion* lacks merit, those fees cannot be viewed as reasonably incurred.  Accordingly, the request for an award of the expenses and attorney's fees incurred in pursuing the instant *Motion* will be denied with prejudice.

The debtor's *Motion* fails to identify any other attorney's fees allegedly caused by the failure of Djourabchi and Welt to indicate what part of their claim is for prepetition arrears.  The court will deny the *Motion* without prejudice to the debtor's seeking attorney's fees if he can identify attorney's fees caused by the failure of Djourabchi and Welt to indicate prepetition arrears they are owed, and if he can advance grounds why the court, in the exercise of its discretion, ought to award such fees incident to Rule 3001(c)(2)(D)(ii) as "reasonable expenses and attorney's fees caused by the failure."  *See In re Dunlap*, No. 12-30710 HRT, 2013 WL 5497047, at *2 (Bankr. D. Colo. Oct. 3, 2013) (attorney's fees incurred in making a request for

14

information that was required to be included on a proof of claim were "caused" by the creditor's failure to include required documentation as part of its proof of claim). If the debtor were to file such a motion, there would likely be subject matter jurisdiction, just as when a motion for Rule 9011 sanctions for filing an improper petition is filed in a dismissed case. It is not apparent, however, that there were attorney's fees incurred relating to the defective proof of claim other than the fees incurred in pursuing the instant misguided *Motion*.

## VII

The debtor also invokes the doctrine of judicial estoppel as a basis for declaring the prepetition arrears not to be owed. However, "the doctrine precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir. 1987). In other words, the doctrine is a defense to a claim. As discussed above, there no longer is any subject matter jurisdiction in this court to hear a proceeding to adjudicate the amount of the claim under the $80,000 promissory note. Accordingly, no proceeding is pending in this bankruptcy case in which an inconsistent position is being taken, and the doctrine of judicial estoppel does not come into play. If Djourabchi and Welt assert in another bankruptcy case or in another forum a claim for any prepetition

arrears that existed in this case, and the defense of judicial estoppel has merit,[7] the debtor will be free to raise the defense then.

## VIII

Under 11 U.S.C. § 1327(c), the property vesting in a debtor pursuant to a confirmed plan "is free and clear of any claim or interest of any creditor provided for by the plan." Here, the arrears claim at issue was *not* provided for by the plan, and thus the property remains subject to the arrears claim.

Even if the plan *had* provided for the arrears claim and Djourabchi and Welt had not filed a proof of claim for such arrears, the confirmation order (Dkt. No. 134) provided that

> notwithstanding 11 USC § 1327(c), if a timely proof of claim has not been filed for a claim, the property vesting in the debtor under 11 USC § 1327(b) shall remain subject to any lien securing the claim except to the extent that the claim would not be an allowed secured claim under 11 USC § 506(a) and the claim is discharged under 11 USC § 1328.

---

[7] The doctrine of judicial estoppel might *not* apply in such a future proceeding. First, the majority rule is that judicial estoppel "applies only if the party against whom the estoppel is claimed actually obtained a judgment as a result of the inconsistent position." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir. 1990). *See also Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980) ("success in the prior proceeding is clearly an essential element of judicial estoppel"); *Atkins v. United States*, 283 A.2d 204, 206 n.4 (D.C. 1971) (same). Second, the doctrine might not apply if the inconsistent statement was made in this bankruptcy case (as the prior proceeding) based on mistake or inadvertence. *See New Hampshire v. Maine*, 532 U.S. 742, 753 (2001). Finally, if the debtor was aware that arrears existed and was not misled, the doctrine would not apply.

Moreover, some courts hold that even in the absence of such a provision in the court's confirmation order, the failure to file a proof of claim does not affect a lien provided for by the plan, drawing support for that conclusion from 11 U.S.C. § 506(d), which provides that a lien is not void when the claim "is not an allowed secured claim due only to the failure . . . to file a proof of such claim . . . ." *See Matteson v. Bank of America, N.A. (In re Matteson)*, 535 B.R. 156, 164-65 (B.A.P. 6th Cir. 2015).[8]

By logical extension, arguably, the holding in *Matteson* ought to apply not only to secured creditors who altogether fail

---

[8] In *Matteson*, the chapter 13 debtors listed Bank of America on Schedule D as a secured creditor with five mortgage loans, two of which were the subject of dispute. The debtors' proposed chapter 13 plan provided for a curing of any defaults and maintenance of ongoing payments pursuant to 11 U.S.C. § 1322(b)(5), and likewise provided that the trustee would make those payments. The plan specified that creditors must file a proof of claim in order to receive distributions from the trustee under the plan. Bank of America did not file a proof of claim as to the two loans at issue and did not receive distributions from the trustee as to these two loans. Upon receiving their discharge, the debtors filed an adversary complaint seeking a declaration that Bank of America's liens had been discharged upon completion of the plan. The Bankruptcy Court for the Middle District of Tennessee concluded that, following completion of the plan and entry of the debtors' discharge, Bank of America's liens remained intact, but the amount secured by those liens was reduced by the amount of the distribution Bank of America would have received under the plan had it filed a proof of claim. The Bankruptcy Appellate Panel reversed, holding that Bank of America's failure to file a proof of claim constituted a waiver of the right to receive payment under the plan, but did not otherwise alter Bank of America's right to payment or the amount secured by its lien.

17

to file a proof of claim, but also to creditors who *do* file a proof of claim but neglect to include arrears on that proof of claim.  In such cases, even if the plan provides for the curing of whatever arrears exist, under *Matteson*, the consequence would be a waiver of the right to receive distributions from the trustee under the plan towards payment of the arrears claim, not a reduction in the amounts owed.[9]

It is true that Fed. R. Bankr. P. 3002.1 provides a procedure for the debtor to obtain a determination of whether the debtor has cured any arrears when a claim secured by a security interest in the debtor's principal residence is "provided for under § 1322(b)(5) of the Code in the debtor's plan."[10]  Here, however, the issue of determining whether the debtor has cured

---

[9] In chapter 11, 11 U.S.C. § 1141(c) provides that except as otherwise provided in the plan or in the confirmation order, "property dealt with by the plan is free and clear of all claims," and, given the focus on property dealt with by the plan, versus liens provided for by the plan, a stronger argument can be made in chapter 11 that a creditor whose collateral is dealt with by a plan may lose its lien if it does not file a proof of claim. *See In re Reg'l Bldg. Sys., Inc.*, 251 B.R. 274, 287 (Bankr. D. Md. 2000) (Teel, J., sitting by designation), *aff'd*, 254 F.3d 528 (4th Cir. 2001).  *But see Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.),* 725 F.3d 494, 496 (5th Cir. 2013) (holding that notice to a creditor of the bankruptcy case does not, alone, constitute participation in the reorganization sufficient to permit the debtor to void that creditor's lien under § 1141(c) through confirmation of a plan).

[10] Section 1322(b)(5) permits a plan to provide for the curing of arrears on a mortgage on the debtor's principal residence, if the last payment on the mortgage is due after the date on which the final payment under the plan is due.

18

the arrears does not arise because the plan did *not* make provision for payment of any arrears owed on the $80,000 promissory note, and Rule 3002.1 is thus inapplicable.

IX

It is unfortunate that the proof of claim regarding the $80,000 promissory note did not include the prepetition arrears that were owed, a circumstance that the debtor alleges led him not to provide for curing the arrears under his chapter 13 plan. (Djourabchi and Welt assert that the debtor was well aware of the arrears, but I need not decide that issue.)  The lesson may be that a chapter 13 debtor must investigate a creditor's claim (via Fed. R. Bankr. P. 2004 or otherwise) to insure that if there *are* arrears not reflected on any proof of claim, the debtor can file a proof of claim on behalf of the creditor for the arrears and provide for the curing of the arrears under the debtor's plan. (Whether after completion of a chapter 13 plan a debtor can invoke doctrines of estoppel in future litigation based on inaccuracies in a creditor's proof of claim, or based on inaccuracies in other information provided by the creditor, is an issue to be decided in such future litigation, and not within this bankruptcy case.)  Alternatively, the debtor could invoke Rule 3002.1 (if the creditor has a security interest against the debtor's principal residence) or sue the creditor via an adversary proceeding to obtain a binding determination of the

amount of arrears owed and that are to be paid under the debtor's plan.

X

An order follows.

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.